LAW OFFICES
## WILLIAMS & CONNOLLY LLP®

LORYN HELFMANN
(202) 434-5473
lhelfmann@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 28, 2025

**Via ECF**

Hon. Jennifer Rearden
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007

    Re: <u>Howie v. Ernst and Young LLP, et al.</u>, No. 1:25-cv-05973-JHR-GS

Dear Judge Rearden:

    We represent Ernst & Young Global Limited ("EY Global"), a private UK company limited by guarantee. We write pursuant to Rule 9.C.i. of the Court's Individual Rules to oppose Plaintiff's request (Dkt. 6) to file an unredacted copy of his Complaint on the docket. EY Global's redactions are narrowly tailored to further the "higher value" of preserving attorney-client privilege. *Richards v. Kallish*, 2023 WL 4883461, at *2 (S.D.N.Y. Aug. 1, 2023); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006) ("attorney-client privilege might well be … a compelling reason" to seal information). Mr. Howie's request should be denied.

    EY Global serves as the coordinating entity for the EY global organization, which consists of country-specific member firms, each of which is a separate legal entity. EY Global is not the parent company to any member firm, nor does it provide any services to audit clients. EY Global is not an employer under the Sarbanes-Oxley Act ("SOX"); and Mr. Howie was an EY US partner, not an employee of EY Global. Mr. Howie nevertheless alleges that EY Global retaliated against him in violation of SOX by declining to renew his temporary rotation with EY Global after its planned expiration. EY Global denies Mr. Howie's allegations and intends to move to dismiss his claim.

    Mr. Howie filed a 327-paragraph Complaint, which spans 118 pages. EY Global's redactions are a tiny fraction—approximately 5%—of his lengthy Complaint.[1] Courts in this district routinely find that similarly limited redactions are sufficiently narrow. *See, e.g.*, *Cardwell v. Davis Polk & Wardwell LLP*, 2022 WL 17175759, at *2 (S.D.N.Y. Nov. 23, 2022) (sealing

---

[1] The paragraphs that describe privileged communications involving EY Global's counsel are 68, 164, 174–76, 181, 184, 185, 187, 227–33, 235, and 291. Collectively, the EY Global redactions comprise no more than six pages.

1

portions of nine out of 44 exhibits because "preservation of the attorney-client privilege is a higher value" that overcame the "presumption of access to judicial documents"); *Cooksey v. Global Grind Dig.*, 2016 WL 316853, at *3 (S.D.N.Y. Jan. 26, 2016), Dkt. 29-1 (Am. Compl.); *id.*, Dkt. 46 (Order) (granting redactions for 18 of 77 pages in complaint).

EY Global requested these limited redactions for a singular purpose: to protect against public disclosure of its attorney-client privileged communications. "The preservation of attorney-client confidentiality is a well-recognized exception to the presumption of access." *E.E.O.C. v. Kelley Drye & Warren LLP*, 2012 WL 691545, at *4 (S.D.N.Y. Mar. 2, 2012); *see also Charleston Immersive/Interactive Studio LLC v. Aydin*, 2024 WL 3413736, at *1 (S.D.N.Y. July 15, 2024) ("well settled that the preservation of attorney-client privilege may outweigh the presumption" of public access (quotation omitted)); *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 5447267, at *4 (S.D.N.Y. Aug. 24, 2023) (sealing documents because "the elements of attorney-client privilege are met," so "privacy interests … outweigh the presumption of public access").

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see also Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*, 850 F. Supp. 255, 255 (S.D.N.Y. 1994) (privilege protects "communications between the corporation and its attorneys"). In the redacted paragraphs, Mr. Howie has inappropriately disclosed privileged communications.[2]

As an initial matter, Mr. Howie *does not dispute* that he discloses communications involving EY Global's attorneys. *See* Dkt. 6, at 2-3. Nor could he. The Complaint freely details the substance of specific communications with individually identified members of EY Global's General Counsel's Office. *E.g.*, Dkt. 1 ¶ 227 (describing "call[]" on "December 23, 2023" in which the Deputy General Counsel "demanded" and "requested" specific actions); *id.* ¶ 291 (describing specific "warning and directive" from the General Counsel on "January 14, 2022").

Likewise, Mr. Howie *does not dispute* that these communications with EY Global's counsel were intended to be and were kept confidential. *See* Dkt. 6, at 2-3. Again, he simply cannot. For example, for the January 2022 call identified in the preceding paragraph, the only participants that Mr. Howie identifies are himself and EY Global's General Counsel. That communication does not involve anyone outside the privilege. Mr. Howie also describes communications with counsel in which additional EY Global individuals participated—such as its Vice Chair of Professional Practice, *e.g.*, Dkt. 1 ¶ 227—but those professionals also are within EY Global's privilege. *E.g.*, *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519–20 (S.D.N.Y. 2001) ("the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege"). Mr. Howie does not argue otherwise.

Mr. Howie instead hangs his hat on the *ipse dixit* assertion that the substantive communications he describes were "not for the purposes of legal advice." Dkt. 6, at 3; *see also*, *e.g.*, Dkt. 1 ¶ 318 (alleging same). Mr. Howie, who does not hold the privilege, is not entitled to

---

[2] The privilege belongs to EY Global, not to Mr. Howie. *See Thomas v. F.F. Fin., Inc.*, 128 F.R.D. 192, 193 (S.D.N.Y. 1989). Mr. Howie does not argue otherwise.

unilaterally determine whether communications with EY Global's counsel were for the purpose of rendering legal advice. Moreover, the communications that Mr. Howie discloses are quintessential legal advice. He alleges, for example, that the General Counsel "explicitly instruct[ed] him to stop" certain conduct and to take certain steps, including engaging in further discussions with specific individuals for the purpose of revising a particular piece of written work product. *E.g.*, Dkt. 1 ¶ 187. He also discloses *both* that the Deputy General Counsel advised him to make specific revisions to certain work product *and* counsel's rationale for the revisions. *E.g.*, *id.* ¶ 228.

These communications with counsel indisputably are protected by the attorney-client privilege. *See, e.g.*, *Radio Today v. Westwood One*, 1989 WL 2733, at *1 (S.D.N.Y. Jan. 12, 1989) (lawyer's "instructions" advising staff what they "could and could not say" were privileged and "must not be disclosed"); *COVENTRY CAPITAL US LLC, Plaintiff, v. EEA LIFE SETTLEMENTS INC. et al., Defendants. Additional Party Names: EEA Life Settlements Fund PCC Ltd.*, 2021 WL 4312026, at *4 (S.D.N.Y. Sept. 22, 2021) (privilege protected draft contracts revised by attorneys).

The sole case Mr. Howie cites is inapposite. *See* Dkt. 6, at 2. There, it was unclear from the pleading how the plaintiff obtained the purportedly privileged information. *See Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 294-95 (S.D.N.Y. 2024). Here, Mr. Howie has disclosed precisely who from the General Counsel's Office communicated with him, when those communications occurred, and what those communications were. It is abundantly clear that the communications with EY Global's counsel were both confidential and rendered legal advice.

Mr. Howie's final pitch for public disclosure also fails. He argues there is an "exception" that permits disclosure because the communications "relate directly" to his claims. Dkt. 6, at 3. But that proposition is nowhere to be found in the two cases he cites. In both, the court merely held that the plaintiff's reliance on privileged communications did not warrant *dismissing the plaintiff's claims*. To the extent Mr. Howie's out-of-circuit cases have any bearing here, they support sealing EY Global's privileged communications. *See Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 995–96 (9th Cir. 2009) (encouraging district court "to use the many equitable measures at its disposal to minimize the possibility of harmful disclosures" (internal quotation marks omitted)); *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 841, 858 n.6 (N.D. Cal. 2016) (noting the need for the court to "take measures to protect the confidentiality of the information"). It is axiomatic that privileged information need not be disclosed on the public docket for a party to rely on it in pursuing its claims. *See, e.g. Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2019 WL 3034866, at *4–6 (S.D.N.Y. July 11, 2019) ("appropriate remedy" for plaintiff's reliance on privileged material was to limit public disclosure rather than dismiss claim).

Mr. Howie's letter motion should be summarily denied. If the Court deems it necessary to consider Mr. Howie's request further at this stage, then EY Global requests in the alternative that the Court permit full briefing on the issue so that EY Global is afforded a full and opportunity to substantiate its privilege claims.

3

Respectfully submitted,

*/s/ Loryn Helfmann*
Loryn Helfmann
Steven M. Farina (*pro hac vice* forthcoming)
Adrienne E. Van Winkle (*pro hac vice* forthcoming)
Williams & Connolly LLP
860 Maine Ave. S.W.
Washington, DC 20024
Tel: 202-434-5000
lhelfmann@wc.com

*Attorneys for Ernst & Young Global Limited*

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, a true and correct copy of the foregoing pleading was filed on the CM/ECF system, which will send notification of such filing to all parties and counsel in this case.

*/s/ Loryn Helfmann*
Loryn Helfmann