**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOE HOWIE, Plaintiff, -against- ERNST & YOUNG LLP, ERNST & YOUNG US LLP, AND ERNST & YOUNG GLOBAL LIMITED, Defendants. | Civil Action No.: 1:25-cv-5973 |

# PLAINTIFF JOE HOWIE'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO UNSEAL THE AMENDED COMPLAINT

**WIGDOR LLP**

Michael J. Willemin
Lawrence M. Pearson
Daniel J. Altaras

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
lpearson@wigdorlaw.com
daltaras@wigdorlaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 1

ARGUMENT ..... 2

I. Public Access to Judicial Documents ..... 2

II. Attorney-Client Privilege is Not Implicated by the Redacted Allegations ..... 3

a. References to In-House Counsel that Do Not Involve the Provision of Legal Advice Are Not Subject to the Attorney-Client Privilege ..... 3

b. Defendants Waived Their Attorney-Client Privilege ..... 5

c. The Crime-Fraud Exception Applies ..... 6

d. The Case's Procedural History Demonstrates that Howie Did Not Disclose Attorney-Client Privileged Communications ..... 7

e. An Unredacted Version of the Amended Complaint Must Be Publicly Filed ..... 8

III. Attorney Work Product Doctrine ..... 8

IV. SOX Privilege ..... 9

V. The Partnership Agreement Should Not Be Under Seal ..... 10

CONCLUSION ..... 15

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

Bennett v. Sprint Nextel Corp., 2012 WL 4829312 (W.D. Mo. Oct. 10, 2012) .......... 9

Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d (2d Cir. 2016). .......... 10

Brown v. Maxwell, 929 F.3d 41 (2d Cir. 2019) .......... 10

DoorDash, Inc. v. City of New York, 2024 WL 4285682 (S.D.N.Y. Sept. 24, 2024) .......... 10

Greenlight Cap., Inc. v. Fishback, No. 24 Civ. 4832 (PAE), 2025 WL 2642583 (S.D.N.Y. Sept. 15, 2025) .......... 8

In re Grand Jury Subpoenas Dated Sept. 13, 2023, 128 F.4th 127 (2d Cir. 2025) .......... 6

In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32 (2d Cir. 1986) .......... 6

In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14 MD 2542 (VSB) (HBP), 2019 WL 6736132 (S.D.N.Y. July 22, 2019) .......... 8, 9

In re Megan-Racine Assocs., Inc., 189 B.R. 562 (Bankr. N.D.N.Y. 1995) .......... 6

J.L. on behalf of J.P. v. New York City Dep't of Educ., No. 17 Civ. 7150 (PAC) (KHP), 2023 WL 4421716 (S.D.N.Y. July 8, 2023) .......... 3, 4, 5

Lohnn v. Int'l Bus. Machines Corp., No. 21 Civ. 6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) .......... 2, 3

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006) .......... 2, 3, 10

S.E.C. v. Goldstone, 301 F.R.D. 593 (D.N.M. 2014) .......... 9

Schaeffler v. United States, 806 F.3d 34 (2d Cir. 2015) .......... 6

SEC v. Ripple Labs, Inc.,
2022 WL 329211 (S.D.N.Y. Feb. 3, 2022) ........ 10

Silverman v. Motorola, Inc.,
No. 07 Civ. 4507, 2010 WL 4659535 (N.D. Ill. June 29, 2010) ........ 9

Suber v. VVP Servs., LLC,
No. 20 Civ. 8177 (AJN), 2023 WL 4817551 (S.D.N.Y. July 27, 2023) ........ 3

U.S. Bank Tr. Co., Nat'l Ass'n v. DISH DBS Corp.,
No. 24 Civ. 3646 (JGLC), 2025 WL 3211751 (S.D.N.Y. Nov. 17, 2025) ........ 6

United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.,
338 F.R.D. 309 (S.D.N.Y. 2021) ........ 7

United States v. Amodeo,
44 F.3d 141 (2d Cir. 1995) ........ 2

United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995) ........ 2

United States v. Guo,
23 CR 118 (AT), 2024 WL 2330921 ........ 6

United States v. Castillero,
23 CR 622 (JMF), 2025 WL 2959463 ........ 3

United States v. Jacobs,
117 F.3d 82 (2d Cir. 1997) ........ 6

United States v. Zolin,
491 U.S. 554 (1989) ........ 4

Upjohn Co. v. United States,
449 U.S. 383 (1981) ........ 3

WCA Holdings III, LLC v. Panasonic Avionics Corp.,
No. 20 Civ. 7472 (GHW), 2025 WL 1434375 (S.D.N.Y. May 17, 2025) ........ 3, 4


**Statutes**


15 U.S.C. § 7215(b)(5)(A) ........ 9

18 U.S.C. § 1001(a) ........ 7

In accordance with this Court's Order (Dkt. 68), Plaintiff Joe Howie ("Plaintiff" or "Howie") respectfully submits this memorandum of law in response to Defendants Ernst & Young LLP's ("EY"), Ernst & Young U.S. LLP's ("EY US"), and Ernst & Young Global Limited's ("EY Global") (collectively, "Defendants") supplemental submissions in support of their pending letter motions opposing Plaintiff's request to unseal the Amended Complaint and related documents.

## PRELIMINARY STATEMENT

Defendants have repeatedly asserted that specific allegations in the Amended Complaint are protected from disclosure due to the attorney-client privilege, Sarbanes-Oxley ("SOX") privilege, and because they contain confidential information.[1] However, as their submissions show, there are no privileged or confidential communications or materials included in the Amended Complaint. Therefore, given the public's right of access to court filings, the Court should unseal the Amended Complaint, the Partnership Agreement and related documents that Defendants themselves introduced as part of the Motion to Dismiss papers.

## FACTUAL BACKGROUND

On January 9, 2025, Howie filed his Complaint against Defendants with OSHA. On February 14, 2025, Defendants claimed in separate letters that Plaintiff's OSHA Complaint contained attorney-client privileged information. However, they flagged only the allegations that referred to the General Counsel's Office and asserted, without more, that those allegations were subject to the attorney-client privilege. On March 3, 2025, Plaintiff submitted a detailed letter contesting both Defendants' privilege assertions. Specifically, Plaintiff explained that the allegations cited by Defendants did not contain the substance of any privileged communications, but rather referred only to the knowledge and/or involvement of various in-house EY legal department employees regarding Plaintiff's protected Complaints. As a result, Plaintiff explained that he would not withdraw and re-submit his OSHA Complaint based on Defendants' vague and self-serving assertions of privilege.

On May 1, 2025, Defendants forced Plaintiff to withdraw from the Firm's partnership and terminated his employment for cause, falsely and pretextually claiming in a letter that he "disclos[ed] attorney client privileged communications to OSHA and refus[ed] to cooperate in any effort to remediate such improper disclosures." This amounts to an admission of retaliation for Howie's OSHA Complaint. In addition, most of the allegations cited by Defendants do not even refer to communications, let alone privileged communications with counsel. Further, any communication by Plaintiff that was with an in-house attorney was not for the purposes of legal advice. Finally, even if the allegations did disclose attorney-client privileged communications, which they did not and do not, the facts alleged concern unlawful and fraudulent conduct that falls squarely within well-established exceptions to the attorney-client privilege. Ultimately, the communications at issue were needed to assert Howie's whistleblower claims and are part of his

[1] In their supplemental briefing, Defendants failed to discuss and therefore waived any objections to the redactions in place with respect to paragraphs 95, 276, and 307. Those redactions were made only to address concerns raised by Defendants. The abandonment of any argument regarding those redactions demonstrates that Defendants were overbroad when they asserted privilege and even they realized they did not have a colorable argument regarding certain paragraphs after the Court granted their request to submit supplemental briefing on the issue.

legally protected activities – making them necessary to include in the complaints. EY's decision to terminate Howie for allegedly violating attorney-client privilege is nothing more than a blatantly pretextual excuse to retaliate against Plaintiff for filing his whistleblower complaint and seeking legal relief.

Howie later amended his OSHA Complaint for clarity and provided a draft of his proposed federal Complaint to Defendants. The differences between his OSHA and draft federal Complaint do not at all "acknowledge that Howie included material . . . that was both privileged and unnecessary to his claim." EY US Brief at p. 2. In reality, the edits to the OSHA Complaint were designed to streamline the allegations and clarify the factual foundation for Plaintiff's claims. On July 16, 2025, Defendants separately sent correspondence regarding specific allegations that they maintained were privileged or confidential. On July 21, 2025, Howie filed his federal Complaint with redactions to address Defendants' stated, albeit misguided, privilege and confidentiality concerns. Plaintiff filed his redacted Complaint with the Court in good faith to allow the Parties to make their arguments to the Court, and not to concede the privileged nature of any part of the Complaint. Aside from the deletion of half a sentence, the redactions in the Complaint (and the Amended Complaint) were applied to every single one of the allegations flagged by Defendants in their recent correspondence. Furthermore, the Complaint (and the Amended Complaint) both clarified that, "The redactions made throughout . . . are not a concession that these allegations are in any way privileged or confidential. Rather, Plaintiff has redacted certain allegations at Defendants' request, to avoid unnecessary motion practice related to the disclosure of allegedly privileged communications or confidential information while the Court rules on Plaintiff's ability to file an unredacted version of the Complaint on the docket." Amended Complaint ("Am. Compl.") at ¶ 75 n. 10. Therefore, the procedural history of this case shows that Plaintiff redacted allegations that Defendants claimed were privileged solely so that this Court could provide a definitive ruling and to avoid unnecessary complications.

## ARGUMENT

### I. PUBLIC ACCESS TO JUDICIAL DOCUMENTS

As an initial matter, "[t]he Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment." Lohnn v. Int'l Bus. Machines Corp., No. 21 Civ. 6379 (LJL), 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022) (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006)). "Both presumptions exist to protect values that are essential to the preservation of a free democratic society." Lohnn, 2022 WL 36420, at *6. "The common law right of public access to judicial documents is firmly rooted in our nation's history," and "is said to predate the Constitution." Id. (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). The presumption of immediate public access "is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice . . . [P]rofessional and public monitoring [of the work of the courts] is an essential feature of democratic control." Lohnn, 2022 WL 36420, at *6 (citing Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"))).

Finally, "the Second Circuit has instructed that motions to seal (or unseal) should not linger on the docket for long. The First Amendment does not easily tolerate the continued concealment

of information to which the public has a right of access—whether self-imposed by the judiciary or imposed by other branches of government." Lohnn, 2022 WL 36420, at *7. "Each passing day [that a document or information remains under seal] may constitute a separate and cognizable infringement of the First Amendment." Id. (quoting Lugosch, 435 F.3d at 126) (second quotation omitted). "The public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents." Id. (quoting Lugosch, 435 F.3d at 127). Therefore, considering the public's constitutional right of access to judicial documents and EY's transparent desire to apply redactions far beyond any plausible privileges merely to hide information regarding policies and practices it would simply rather hide from scrutiny, this Court should immediately unseal the redactions in the Amended Complaint, the Partnership Agreement and related documents.

## II. ATTORNEY-CLIENT PRIVILEGE IS NOT IMPLICATED BY THE REDACTED ALLEGATIONS

### a. References to In-House Counsel that Do Not Involve the Provision of Legal Advice Are Not Subject to the Attorney-Client Privilege

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." Suber v. VVP Servs., LLC, No. 20 Civ. 8177 (AJN), 2023 WL 4817551, at *4 (S.D.N.Y. July 27, 2023). "[T]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts." Id. (citing Upjohn Co. v. United States, 449 U.S. 383, 395 (1981)). Additionally, the privilege attaches only if "the predominant purpose of the communication is to render or solicit legal advice." Id. "The privilege does not protect communications that were generated for the predominant purpose of obtaining business or other advice, as opposed to legal advice . . . Legal advice involves the interpretation and application of legal principles and requires a lawyer to rely on legal education and experience to inform judgment." J.L. on behalf of J.P. v. New York City Dep't of Educ., No. 17 Civ. 7150 (PAC) (KHP), 2023 WL 4421716, at *1 (S.D.N.Y. July 8, 2023). For this reason, not every communication with an attorney, particularly an in-house attorney, is privileged. Courts recognize that, "because in-house counsel may have mixed business-legal responsibility. . . their day-to-day involvements in their employers' affairs may blur the line between legal and nonlegal communications." WCA Holdings III, LLC v. Panasonic Avionics Corp., No. 20 Civ. 7472 (GHW), 2025 WL 1434375, at *4 (S.D.N.Y. May 17, 2025). Therefore, "[i]n light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." Id.

In this case, Defendants seek to maintain the redactions in the Amended Complaint claiming that they prevent the disclosure of attorney-client privileged communications. However, the attorney-client privilege "pertains solely to the substance of communications, it does not preclude inquiry into the subject matter of the communications." United States v. Castillero, No. 23 CR 622 (JMF), 2025 WL 2959463, at *9 (S.D.N.Y. Oct. 20, 2025). First, the allegations at issue only generally describe or merely refer generically to directives and comments by in-house counsel. The allegations "do not include the substance of communications by counsel at all, let

alone communications that were intended to be kept confidential." Id. In fact, none of these allegations quote or even convey the substance of a single privileged communication with counsel. Am. Compl. at ¶¶ 191, 201-203, 208, 211-212, 214, 254-260, 262, 318, 340.[2]

Second, any communications with counsel indirectly referenced in these allegations do not involve "the interpretation and application of legal principles." J.L. on behalf of J.P., 2023 WL 4421716, at *1. [redacted]

Yet, EY US falsely claims that the Amended Complaint contains "descriptions of legal advice." EY US Brief at p. 3. EY US claims that "it is important to note the context of these communications," while simultaneously arguing that it "should not be placed in a position to reveal all of the contexts in which its lawyers provide legal advice." Id. at 4. Ironically, the case EY US relies upon to support its assertion that it should not be forced to reveal the context surrounding these allegations, mischaracterizes the quotation it uses by deploying it without regard for its context. The quotation was made in the context of the Supreme Court's refusal to establish a blanket rule allowing *in camera* review as a tool for determining the applicability of the crime-fraud exception to the attorney-client privilege. United States v. Zolin, 491 U.S. 554, 571 (1989). The language relied upon by EY US has no bearing on their attempt to abuse their privilege claim by applying it broadly without supporting it adequately. Finally, EY US misleadingly quotes only the first part of the sentence and ignores that the Supreme Court acknowledged in that same sentence that, "a complete abandonment of judicial control would lead to intolerable abuses." Id.

Furthermore, EY US claims that its in-house counsel was asked for and gave legal advice, citing a conclusory, self-serving declaration from its in-house counsel. EY US Brief at p. 4. However, the declaration does not show or state that EY personnel sought legal advice or that in-house counsel gave such advice. [redacted]

---

[2] EY US only asserts that the redactions in paragraphs 254, 257-258, 262, 318, and 340 are attorney-client privileged and should remain under seal. The remaining allegations are only deemed subject to the attorney-client privilege by EY Global. However, EY Global does not bother to explain how any of these allegations are privileged. Instead, they simply filed a chart that self-servingly describes each allegation at issue as "communications relating to . . . legal advice" in a wholly conclusory fashion.

[redacted] Nevertheless, even if those communications did involve legal advice, they are not the same conversations as those indirectly referenced in the Amended Complaint.

[redacted] Thus, the communication in this allegation is clearly a non-actionable and/or non-privileged business communication, not subject to the attorney-client privilege.

Additionally, EY US claims that in-house counsel's comments to the materials disseminated by Howie were made due to "specific legal concerns" and then generally cite the redacted allegations at issue. Tellingly, these allegations do not support EY US's self-serving representation that these unspecified "comments" were in response to undefined "legal concerns." Essentially, EY US repeatedly incorrectly asserts without basis that any communication by an attorney necessarily involves "the interpretation and application of legal principles" and is definitionally privileged. J.L. on behalf of J.P., 2023 WL 4421716, at *1. However, as discussed above, the law does not extend any privileges to attorney-client communications that primarily serve a business function, and no requests for legal advice had been made by Howie. Id.

[redacted]

**b. Defendants Waived Their Attorney-Client Privilege**

"For the common interest rule to apply, (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest. The key consideration is that

the nature of the interest be identical, not similar, and be legal, not solely commercial." United States v. Guo, No. 23 CR 118 (AT), 2024 WL 2330921, at *2 (S.D.N.Y. May 22, 2024). "A common legal interest exists where the parties asserting the privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation." In re Megan-Racine Assocs., Inc., 189 B.R. 562, 573 (Bankr. N.D.N.Y. 1995). In fact, "New York courts uniformly reject efforts to expand the common interest doctrine to communications that do not concern pending or reasonably anticipated litigation." U.S. Bank Tr. Co., Nat'l Ass'n v. DISH DBS Corp., No. 24 Civ. 3646 (JGLC), 2025 WL 3211751, at *3 (S.D.N.Y. Nov. 17, 2025). Finally, "communications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery under the common interest rule." Guo, 2024 WL 2330921, at *2. Courts have recognized that a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule. Id.

[redacted] Further, they maintain the exception applies although they were "not parties in ongoing litigation." Id. (citing Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015)). However, they conveniently neglect to mention that an assertion of the common-interest privilege still requires pending or reasonably anticipated litigation. In Schaeffler, the common-interest privilege was implicated by a confidentiality agreement between a company and its majority owner and a consortium of lenders whereby the lenders agreed to extend additional credit in exchange for "control over [the owner's] legal decisions to settle, pay, or sue" in response to an IRS audit. Id. at 42. Further, in that case "subsequent litigation . . . was on this record highly likely." Id. at 44. [redacted] Furthermore, even if Defendants coordinated with respect to business strategy or concerns about hypothetical litigation (which has not been established), that would still not be covered by the common interest exception. Guo, 2024 WL 2330921, at *2. [redacted]

### c. The Crime-Fraud Exception Applies

The crime-fraud exception "strips the privilege from attorney-client communications that were made in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re Grand Jury Subpoenas Dated Sept. 13, 2023, 128 F.4th 127, 141 (2d Cir. 2025). To establish that the crime-fraud exception applies to a communication, Plaintiff must "demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). Lastly, a communication is in furtherance of a crime if it is "intended . . . to facilitate or to conceal . . . criminal activity." In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986).

[redacted]

[redacted] Through this time of increasing pressure and frantic action by EY leadership, it became even more clear to Howie that EY would go to surprising lengths to ensure that regulators did not see GWL information that highlighted client risks that may have been unaddressed, including NOCLAR, or anything that might enable regulators to critically evaluate audit team decisions." Id. at ¶263. Therefore, the crime-fraud exception applies because the allegations at issue concern communications with counsel specifically designed to conceal material facts to the PCAOB in violation of 18 U.S.C. § 1001, which makes it a crime to provide a false statement or conceal material facts "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a). In fact, courts have held that the crime-fraud exception applies to communications intended to mislead securities regulators. See, e.g., United States Sec. & Exch. Comm'n v. Collector's Coffee Inc., 338 F.R.D. 309, 320 (S.D.N.Y. 2021) (applying the crime-fraud exception where the client "attempted to use communications with counsel in furtherance of a plan to give false statements to the SEC in violation of 18 U.S.C. § 1001."). [redacted]

In its supplemental briefing, EY US flatly asserts that Plaintiff only provided conclusory allegations of fraud, without any discussion or analysis. First, this dispute regarding the applicability of the crime-fraud exception only demonstrates the existence of disputes of material fact and the inability for Defendants to prevail with respect to their pending motions to dismiss or on summary judgment. [redacted] Therefore, even if the Amended Complaint did contain references to otherwise privileged communications with counsel, the crime-fraud exception would apply.

#### d. The Case's Procedural History Demonstrates that Howie Did Not Disclose Attorney-Client Privileged Communications

In their supplemental briefing, EY US claims that Plaintiff's OSHA Complaint and draft federal Complaint included additional details that were privileged, such as advice attributable to counsel. However, even if that were true (which it is not), then EY US is acknowledging that Plaintiff's Complaint and Amended Complaint removed any reference to advice from counsel and it does not disclose attorney-client privileged communications. Furthermore, as mentioned, Howie edited his OSHA complaint for clarity and provided a draft of his proposed federal Complaint to Defendants in good faith to allow the Parties to anticipate any disputes. Any changes between Plaintiff's OSHA and draft federal Complaint were designed to streamline the allegations and clarify the factual foundation underlying his claims. In response, Defendants separately sent correspondence identifying specific allegations that they maintained were privileged or

confidential. As a result, Howie applied redactions to address Defendants' stated, albeit overreaching and misplaced, privilege and confidentiality concerns. In fact, aside from the deletion of half a sentence, the redactions in the Complaint (and the Amended Complaint) were imposed on every single one of the allegations flagged by Defendants in their correspondence. Howie and another whistleblower with whom he was in contact have acted with prudence and to protect EY throughout this process, initially raising his concerns internally. The Firm's management disregarded his legally protected complaints, and only later belatedly claimed that his complaints related to privileged information and used that false contention as a pretext to finally formally fire him (rather than continue to keep him suspended and without a role). Thus, contrary to EY US's assertion, the history of this case shows that Plaintiff painstakingly sought to cooperate with EY, including by sealing allegations that Defendants claimed were privileged and/or confidential until this Court could provide a definitive ruling.

### e. An Unredacted Version of the Amended Complaint Must Be Publicly Filed

The protections relied upon by EY US pertain only to genuinely attorney-client privileged communications. However, because the allegations at issue are not subject to the attorney-client privilege, there is no legitimate concern that unsealing these allegations would undermine EY US's non-existent privilege, deter personnel from seeking legal advice or hinder EY US's lawyers from providing legal advice. Lastly, the mere fact that these redactions only involve a few of the allegations in a voluminous Complaint, has no bearing on whether those allegations should be redacted. The redaction of key allegations regarding Howie's protected complaints and the violations that served as the basis for them would make this case significantly more burdensome for the Parties and the Court, particularly with regard to the management and monitoring of filings. If the communications at issue (much less the actual allegations in the Complaint) are not privileged (which they are not), the public has the right to access these allegations and understand the full subject and context of Howie's claims.

## III. ATTORNEY WORK PRODUCT DOCTRINE

"At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Greenlight Cap., Inc. v. Fishback, No. 24 Civ. 4832 (PAE), 2025 WL 2642583, at *2 (S.D.N.Y. Sept. 15, 2025). Further, "there are three requirements for work product protection to apply; the material must "(1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14 MD 2542 (VSB) (HBP), 2019 WL 6736132, at *5 (S.D.N.Y. July 22, 2019), report and recommendation adopted, 2019 WL 4359551 (S.D.N.Y. Sept. 12, 2019). Ultimately, the doctrine "protects only documents prepared because of the prospect of litigation and does not protect documents that would have been prepared irrespective of the expected litigation." Id.

[redacted]

[3] Tellingly, despite professing the applicability of the common interest doctrine, EY Global does not assert that any portion of these allegations are protected by the work product doctrine.

[redacted] The allegations do not quote or provide the substance of these unidentified comments. Moreover, even if the allegations did quote these unknown comments, they indisputably were not created in anticipation of litigation. [redacted] As such, these comments were not created "because of the prospect of litigation" and cannot be considered privileged work product. In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 2019 WL 6736132, at *5.

## IV. SOX PRIVILEGE

The SOX privilege provides that "all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection…or with an investigation under this section, shall be confidential and privileged as an evidentiary matter." 15 U.S.C. § 7215(b)(5)(A). The privilege "protects from disclosure only materials that an accounting firm 'prepared . . . specifically for the Board.'" Silverman v. Motorola, Inc., No. 07 Civ. 4507, 2010 WL 4659535, at *4 (N.D. Ill. June 29, 2010). Further, the privilege "is applicable to only a portion of any information or documents that may derive from, refer to, or relate to a PCAOB inspection. The reading of the statute proffered by KPMG, which includes any documents 'related to' or 'concerning' the PCAOB inspection process, extends interpretation of the provision beyond its plain language and renders meaningless the phrase 'specifically for the Board.'" Id.

In its supplemental brief, EY US argues that the SOX privilege extends to internal Firm deliberations regarding communications with the PCAOB. See EY US Brief at p. 7 (citing Bennett v. Sprint Nextel Corp., 2012 WL 4829312, at *4 (W.D. Mo. Oct. 10, 2012)). However, that case does not hold that internal firm deliberations are necessarily covered under the SOX privilege. Instead, the Bennett court found "that internal KPMG communications that discuss confidential questions or comments *made by the Board* or reflect KPMG's development of responses *to Board inquiries* are also protected." 2012 WL 4829312, at *4 (emphasis added). Thus, it is well-settled that the SOX privilege "does not protect every document concerning or relating to the PCAOB investigation, nor does it protect every document and communication that would not exist but for the investigation." S.E.C. v. Goldstone, 301 F.R.D. 593, 669 (D.N.M. 2014). Accordingly, the key consideration is whether the documents or communications discuss questions or comments made by the PCAOB.

[redacted] However, a plain reading of each of these paragraphs reveals that they do not refer or relate to confidential PCAOB inquiries or inspections: [redacted]

[redacted] Therefore, none of these allegations involve any deliberations regarding communications with the PCAOB or make any mention of confidential PCAOB inquiries or requests. As such, these allegations are not shielded by the SOX privilege.

## V. THE PARTNERSHIP AGREEMENT SHOULD NOT BE UNDER SEAL

The party seeking to place documents under seal "bears the burden of showing that higher values overcome the presumption of public access." DoorDash, Inc. v. City of New York, 2024 WL 4285682, at *1 (S.D.N.Y. Sept. 24, 2024). In order to make that showing, the Second Circuit has articulated a three-part test. Lugosch, 435 F.3d at 119-120. First, the court must determine whether the documents at issue are "judicial documents." Id. at 119. A judicial document is one that "would reasonably have the tendency to influence a district court's ruling on a motion." Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019). Second, the court must assess the weight of the common law presumption of access that attaches to those documents. Lugosch, 435 F.3d at 119. "[T]he presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion." SEC v. Ripple Labs, Inc., 2022 WL 329211, at *1 (S.D.N.Y. Feb. 3, 2022). Third, the court must balance competing considerations against the presumption of access, such as "the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120. Ultimately, a court must "make specific, rigorous findings before sealing [a] document or otherwise denying public access." Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141 (2d Cir. 2016).

Here, the Partnership Agreement (which, along with EY's pension plans, are accessible to many thousands of people) is indisputably a judicial document entitled to a high presumption of public access because the terms and conditions of Plaintiff's employment as detailed in the Partnership Agreement bear directly on his eligibility to bring claims under SOX and relevant to the Court's anticipated decision on Defendants' motions to dismiss. For this reason, the Partnership Agreement was cited extensively in the Amended Complaint and was filed with the Court by EY US itself as part of its motion to dismiss.[4] Further, EY US's stated privacy interests do not outweigh the presumption of access entitled to the Partnership Agreement, which is merely a common type of agreement and central to the facts. In its supplemental brief, EY US claims it would be materially harmed if the Partnership Agreement were unsealed because competitors would be able to target their employees with greater efficiency. See EY US Brief at p. 9. However, EY US does not explain how disclosing any of the terms of the Partnership Agreement (which does not reveal partnership compensation or the identities of any Firm clients), would allow competitors to more efficiently poach their employees. Thus, EY US has failed to meet its burden and has not provided any information to allow the Court to make the "specific, rigorous findings" necessary to maintain the Partnership Agreement under seal. Bernstein, 814 F.3d at 141.

---

[4] EY US states that "Howie put his partner status at issue in his Amended Complaint, quoting at length terms of the partnership agreement." EY US Brief at p. 9. However, it conveniently neglects to mention that the reason he needed to extensively quote from his Partnership Agreement was because EY US argued during the OSHA proceeding that as a "partner," Howie was not eligible to bring claims under SOX.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant his request to unseal the Partnership Agreement, the Amended Complaint and related documents.

Dated: January 12, 2026
New York, New York

Respectfully Submitted,

**WIGDOR LLP**

By: ______________________

Lawrence M. Pearson
Michael J. Willemin
Daniel J. Altaras

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
lpearson@wigdorlaw.com
daltaras@wigdorlaw.com

*Counsel for Plaintiff*