UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOE HOWIE,                                          :
                                                    :
        Plaintiff,                                  :          **25 Civ. 5973 (RA) (GS)**
                                                    :
        - against -                                 :          **<u>OPINION & ORDER</u>**
                                                    :
ERNST & YOUNG LLP, ERNST & YOUNG :
US LLP and ERNST & YOUNG GLOBAL    :
LIMITED,                                            :
                                                    :
        Defendants.                                 :
------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Joe Howie ("Howie" or "Plaintiff"), a former partner in the

accounting firm of Ernst & Young ("EY"), brings this action alleging, *inter alia*, that

he was unlawfully retaliated against for his protected whistleblower activities, in

violation of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX").

Defendants Ernst & Young LLP and Ernst & Young U.S. LLP (together, "EY US"),

as well as Defendant Ernst & Young Global Limited ("EY Global"), have filed

motions to dismiss Howie's Amended Complaint, which are pending before the

Honorable Ronnie Abrams.

Defendants have sought to seal certain portions of Plaintiff's Complaint and

Amended Complaint, certain exhibits submitted by the parties on the motions to

dismiss, and references in the parties' briefs to the sealed materials. Defendants

assert that sealing is justified on the basis of the attorney-client privilege, a

statutory privilege under SOX, confidential and competitively sensitive material

appearing in certain of the documents, and the privacy interests of an EY client.

Plaintiff generally opposes Defendants' sealing motions and has filed his own motions to unseal his pleadings.  For the reasons set forth below, Defendants' motions to seal and Plaintiff's motions to unseal are both **GRANTED IN PART** and **DENIED IN PART**.[1]

## BACKGROUND

Plaintiff commenced this action on July 21, 2025 with the filing of a 118-page Complaint.  (Dkt. No. 1 ("Compl.")).  Approximately 32 of the Complaint's 327 paragraphs were redacted, in whole or in part.  Plaintiff made these redactions in light of Defendants' pre-lawsuit insistence that "specific allegations were protected from disclosure due to Plaintiff's partnership obligations, attorney client privilege, and Sarbanes-Oxley ('SOX') privilege."  (Dkt. No. 5).  The next day, Plaintiff moved for leave to file an unredacted version of the Complaint.  (Dkt. Nos. 5, 6 Ex. A (unredacted version of Complaint)).  On July 25 and 28, 2025, EY US and EY Global both filed letters opposing Plaintiff's motion and requesting that the Court maintain under seal the unredacted version of the Complaint.  (Dkt. Nos. 10 & 13).

On September 19, 2025, Plaintiff filed an Amended Complaint.  (Dkt. No. 41 ("Am. Compl.")).  In broad terms, the Amended Complaint alleges that, while serving as a partner in EY's U.S. Professional Practice Director group, Howie informed EY management on numerous occasions that the firm had aided and abetted securities law violations by its clients, who were fraudulently misleading

---

[1] On August 12, 2025, Judge Abrams referred this case to the undersigned for general pretrial supervision.  (Dkt. No. 39).

investors, and had also failed to perform procedures required by Public Company Accounting Oversight Board ("PCAOB") and international auditing standards. (Am. Compl. ¶¶ 3, 5, 24).  EY clients who allegedly engaged in fraudulent and criminal activities included publicly traded firms, who are referred to by pseudonyms in the Amended Complaint (*e.g.*, "Registrant 1," "Registrant 2," etc.). (*Id.* ¶¶ 7, 114-25, 209).  Howie claims that in response to and in retaliation for his "advocacy for investor protection," Defendants, *inter alia*, stripped him of his global leadership roles, threatened to force him into early retirement, and ultimately terminated him and removed him from the EY partnership.  (*Id.* ¶¶ 17, 352).  He asserts a single cause of action for relief under the SOX employee protection provisions for whistleblowers.  (*Id.* ¶¶ 18, 349-54).

The Amended Complaint, now 354 paragraphs long, contains redactions identical to those in the original Complaint, albeit to different numbered paragraphs due to the addition of new allegations.  On September 29, 2025, Plaintiff moved for leave to file an unredacted version of the Amended Complaint on the same grounds as set forth in his motion for leave to file an unredacted version of the original Complaint.  (Dkt. Nos. 42, 43 Ex. A (unredacted version of Amended Complaint)).  On October 1, 2025, EY US and EY Global both filed letters in opposition to Plaintiff's motion to unseal the Amended Complaint, citing the same grounds as in their initial oppositions to his motion to unseal the Complaint, and arguing additionally that the anticipated motion to dismiss would dispose of the case and render moot the motions to file unredacted versions of the Complaint and

Amended Complaint.  (Dkt. Nos. 45, 46).  EY US also requested the opportunity to submit full briefing.  (Dkt. No. 45).

On October 13, 2025, EY US filed a motion to dismiss the Amended Complaint (Dkt. Nos. 48) along with a memorandum of law (Dkt. No. 50) and a declaration from counsel, David A. Gordon, attaching various exhibits (Dkt. No. 52). EY US argues that Howie was a partner of EY, not an employee, and thus cannot bring a whistleblower claim under SOX.  (Dkt. No. 50 at 6-16).  EY US also argues that Howie fails to state a claim under the SOX whistleblower provision because he does not adequately allege protected activity or a causal connection between any protected activity and any adverse action against him.  (*Id.* at 16-27).

Two of the exhibits attached to the declaration from EY US's counsel were filed under seal: Exhibit B, which is EY US's partnership agreement ("Partnership Agreement"), and Exhibit C, which is the 10-K Form for an entity referred to in the Amended Complaint as "Registrant 3" ("10-K of Registrant 3").  (Dkt. No. 52 Exs. B & C; *see* Dkt. No. 51 (unsealed version of declaration)).  On that same day, EY US moved to maintain under seal Exhibits B and C to the declaration, as well as the redacted portions of their memorandum of law "that contain or relate to information that is redacted in the Amended Complaint and is the subject of a briefed dispute between the parties."  (Dkt. No. 47).

On October 20, 2025, EY Global filed a motion to dismiss the Amended Complaint, along with a memorandum of law and a declaration from its counsel, Loryn Helfmann, attaching exhibits.  (Dkt. Nos. 55-57).  EY Global argues that it is

4

not a "contractor, subcontractor, or agent" under SOX and also that it was not

Howie's "employer," nor was Howie its "employee." (Dkt. No. 56 at 7-20). EY Global

did not file any exhibits under seal or make any redactions to its brief.

On November 24, 2025, Plaintiff filed a brief in opposition to EY US's motion

to dismiss, with redactions, as well as a declaration from his counsel, Lawrence M.

Pearson, in support of his opposition. (Dkt. Nos. 60, 61, 63 (unredacted version of

memorandum)). On that same day, Plaintiff filed a brief in opposition to EY

Global's motion to dismiss as well as another declaration from Lawrence M.

Pearson. (Dkt. Nos. 64 & 65). Attached as Exhibit A to the latter declaration were

three Rotational Agreements ("Rotational Agreements") between Plaintiff and EY

Global (from July 1, 2020 – June 30 2023; July 1, 2022 – June 30, 2023; and July 1,

2022 – June 30, 2024), which were filed under seal. (Dkt. Nos. 65 Ex. A; *see* Dkt.

No. 67 (unsealed version of declaration)).

Also on November 24, 2025, Plaintiff moved to file an unredacted version of

his brief in opposition to EY US's motion to dismiss. (Dkt. No. 62). Plaintiff also

moved to file the Rotational Agreements under seal, on the basis of EY Global's

request to treat these Agreements as confidential during a prior proceeding before

the Occupational Safety and Health Administration ("OSHA"). (Dkt. No. 66).

On November 25, 2025, the Court issued an Order rejecting EY US's

argument that the pending motions to dismiss might render moot the sealing and

unsealing motions, noting that regardless of the disposition of the motions, "it will

still be necessary for the Court to determine whether the parties' interest in

confidentiality outweighs the public interest in access to judicial documents." (Dkt. No. 68 at 3). The Court also granted all parties leave to file additional briefing regarding all pending and anticipated sealing motions. (*Id.* at 4).

On December 19, 2025, EY US filed a reply brief with redactions (along with a declaration from counsel with no sealed or redacted material) in further support of their motion to dismiss. (Dkt. Nos. 70, 71, 72 (unredacted version of reply brief)). EY US also submitted a motion to maintain under seal portions of the reply brief that "contain or relate to information that is redacted in the Amended Complaint." (Dkt. No. 69).

Also on December 19, 2025, EY US filed a redacted memorandum of law in further support of its opposition to Plaintiff's motion to unseal the Amended Complaint and of its own requests to file the Partnership Agreement and the 10-K for Registrant 3 under seal. (Dkt. Nos. 77 ("EY US Br."); *see* Dkt. No. 79 (unredacted version)). Accompanying the memorandum of law was a declaration from EY US's outside counsel (Dkt. No. 78) that attached a redacted declaration from Joshua R. Pater, Lead Counsel – Advice and Policy at EY US (Dkt. No. 78 Ex. A; *see* Dkt. No. 80 Ex. A (unredacted version ("Pater Decl."))) and a declaration (without redactions) from James Preston, U.S. Partnership Operations Leader at EY US (Dkt. No. 78 Ex. B ("Preston Decl.")). EY US also filed a motion to seal portions of these supplemental submissions "that contain or relate to information that is currently redacted in the Amended Complaint." (Dkt. No. 75).

On the same date, EY Global filed a reply brief along with a declaration from Loryn Helfmann in further support of its motion to dismiss, neither of which contained redactions.  (Dkt. Nos. 73, 74).  EY Global also filed a letter opposing Plaintiff's motion to unseal the Amended Complaint, with an Exhibit A, filed under seal, providing a chart detailing EY Global's assertions of privilege related to redactions of the Amended Complaint.  (Dkt. Nos. 81 ("EY Global Ltr.") & Ex. A ("EY Global Chart"), 82 (unsealed version)).

On January 12, 2026, Plaintiff filed a redacted reply brief in further support of his motion to file an unredacted version of the Amended Complaint (Dkt. Nos. 85 ("Pl. Br."), 84 (unredacted version)), as well as a motion to unseal this reply brief (Dkt. No. 83).

This Order rules on all pending motions to seal or unseal: Docket Nos. 5, 42, 47, 62, 66, 69, 75, 81, and 83.

## LEGAL STANDARDS

There is a long-established "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016).  "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citation omitted).  As a result, motions to seal must be "carefully and skeptically review[ed]" in order to "insure that there really is an extraordinary

7

circumstance or compelling need" to seal the document from public inspection.  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

"The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches.*" Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23 Civ. 11168 (JGLC), 2024 WL 1743109, at *8 (S.D.N.Y. Apr. 23, 2024).  First, the court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Lugosch*, 435 F.3d at 119.  Second, if the documents are judicial documents, the court must determine the weight of the presumption of access.  *Id.*  Third, the court must balance "competing considerations" against the weight of the presumption of access.  *Id.* at 120.

"Judicial documents are materials that are relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotations omitted).  "While most material filed on a federal court's docket in the ordinary course of litigation will consist of judicial documents giving rise to a presumption of public access, the conclusion does not necessarily apply to every paper or document filed with a court." *Giuffre v. Maxwell*, 146 F.4th 165, 176 (2d Cir. 2025).  "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  "All that matters in identifying motion materials as judicial documents 'relevant to the performance of the judicial function' is that they 'would reasonably have the *tendency* to influence a

district court's ruling on a motion.'" *Giuffre*, 146 F.4th at 178 (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original)).

Under the second prong, the Court assesses the strength of the presumption of public access. *See Lugosch*, 435 F.3d at 120. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). "The general and deeply rooted rule is that the presumptive right of access is afforded 'strong weight' when applied to documents that play a central role in 'determining litigants' substantive rights." *Mirlis v. Greer*, 952 F.3d 51, 60 (2d Cir. 2020) (quoting *Amodeo II*, 71 F.3d at 1049).

Under the final prong, the Court weighs countervailing factors which might outweigh the presumption of public access. Despite the presumption of public access, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (cleaned up). Examples of "higher values" include protecting the attorney-client privilege, *see Lugosch*, 435 F.3d at 125, the privacy of innocent third parties, *see Amodeo II,* 71 F.3d at 1050, and the confidentiality of sensitive commercial information, *see Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 15 Civ. 211, 2021 WL 1541385, at *3 (S.D.N.Y. Apr. 20, 2021); *see also Blackboard Inc. v. Int'l Bus. Machs. Corp.*, No. 21 Civ. 7165 (LGS), 2021 WL 4776287, at *1 (S.D.N.Y. Oct. 12, 2021). A "party moving

to place documents under seal 'bears the burden of showing that higher values overcome the presumption of public access.'" *Kewazinga Corp. v. Google LLC*, No. 20 Civ. 1106 (LGS), 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024 (quoting *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017)).

## DISCUSSION

Before the Court are requests to seal or redact the following documents and material in the parties' motion papers describing such documents:  the Complaint, the Amended Complaint, EY US's Partnership Agreement, the Rotational Agreements, and the 10-K Form of Registrant 3.  The Court first considers whether each filing qualifies as a judicial document.  The Court then considers the weight of the presumption of public access with respect to each judicial document.  Finally, the Court weighs the presumption of access against the countervailing considerations cited by EY US and EY Global for each respective filing in order to determine whether sealing or redactions are warranted.

### A.  Judicial Documents

Under the first prong of the three-part test, the Court determines whether the filings at issue are "judicial documents." *Lugosch*, 435 F.3d at 119.  A filing "must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Amodeo I*, 44 F.3d at 145.  The Complaint and Amended Complaint are certainly judicial documents, as "[p]leadings are judicial documents for purposes of common-law and First Amendment rights of access." *Under Seal*, 273 F. Supp. 3d at 469.

10

Courts within the Second Circuit have consistently held that "documents filed in connection to a Motion to Dismiss" qualify as judicial documents. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018). "Dispositive motions are adjudications, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). As such, the memoranda of law, declarations, and exhibits filed in connection with the motions to dismiss also qualify as judicial documents.

The memoranda of law and declarations filed in connection with the various motions to seal contain passages which reflect redacted allegations in the Complaint and Amended Complaint, or portions of the Rotational Agreements, 10-K Form or Partnership Agreement filed under seal, and were therefore also filed with redactions. These filings also constitute judicial documents. *See, e.g.*, *Karam v. W. Side GI, LLC*, No. 18 Civ. 1005 (AT) (SDA), 2025 WL 1692076, at *2 (S.D.N.Y. June 17, 2025) (noting that "[c]ourts within this Circuit have tended to treat a motion to seal as a judicial document"). In sum, all of the redacted and sealed documents at issue qualify as judicial documents.

## B. The Weight of the Presumption of Access

On the second prong of the three-part test, the Court assesses the strength of the presumption of public access. *See Lugosch*, 435 F.3d at 120. Because the public cannot adequately assess the court's actions in a case if it lacks access to the substantive content of the plaintiff's allegations, the redacted portions of the

Complaint and Amended Complaint, along with the related redacted portions of other associated filings, are afforded a strong presumption of access.  *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*¸ 814 F.3d 132, 140 (2d Cir. 2016) ("A complaint . . . is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." (citation omitted)); *Cavender v. U.S. Merch. Marine Acad.*, No. 20 Civ. 2063 (PKC) (ST), 2020 WL 3304538, at *2 (E.D.N.Y. June 18, 2020) ("The weight afforded to a complaint is strong because the complaint is highly relevant to the exercise of Article III judicial power and the complaint invokes the powers of the court, states the cause of action, and prays for relief." (citation omitted)); *Under Seal*, 273 F. Supp. 3d at 470 ("The weight of this presumption is heavy, for the documents are pleadings and motion-related filings that are essential to adjudication.").

The same is true of the Partnership Agreement and the Rotational Agreements, submitted to substantiate the parties' arguments in support of, or opposition to, the motions to dismiss.  "[A] strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion."  *Olson v. Major League Baseball*, 29 F.4th 59, 90 (2d Cir. 2022); *see also Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18 Civ. 11386 (VSB) (KHP), 2023 WL 7126251, at *2 (S.D.N.Y. Oct. 30, 2023) ("Because a Motion to Dismiss is potentially dispositive of a party's claims, a strong presumption of public access attaches to these documents.").  Thus, a strong

presumption of access attaches to these exhibits and related references to them in the parties' filings.

While also filed in support of EY US's motion to dismiss, the 10-K of Registrant 3 stands on a somewhat different footing. Plaintiff chose to file the Complaint and Amended Complaint without identifying Registrant 3 by name. He did not need court approval to do so, as identifying an entity relevant to his allegations in this manner involves no question of sealing or redacting. EY US's purpose in filing the 10-K of Registrant 3 under seal is to preserve the anonymity afforded to Registrant 3 in the Amended Complaint itself. As the identity of Registrant 3 does not appear to be material to a determination of EY US's motion to dismiss, the presumption of public access applies with less force to the 10-K for Registrant 3. The public's ability to evaluate the court's ruling on the motion to dismiss is not significantly impeded if the identity of Registrant 3 remains shielded from public view. *See, e.g.*, *Desarrolladora La Ribera, S. de R.L. de C.V. v. Anderson*, No. 24 Civ. 67 (LAK) (BCM), 2024 WL 2049413, at \*2 (S.D.N.Y. May 6, 2024) (presumption of access "not particularly heavy" where "the redaction of the potential customer's name would neither prevent the public from understanding the nature of plaintiff's claim nor impede its ability to monitor the work of the courts" (citation omitted)).

Finally, a strong presumption of access also attaches to the parties' sealing motions themselves. *See Karam*, 2025 WL 1692076, at \*2 (motion to seal is treated as a judicial document "that is entitled to a strong presumption of public access").

13

### C. Countervailing Values

EY Global asserts that the value of protecting the attorney-client privilege outweighs the presumption of public access with respect to redacted portions of the Amended Complaint (and references to these redacted portions in other filings). (*See* EY Global Ltr. at 2; EY Global Chart).  EY US asserts that attorney-client privilege, a statutory privilege under SOX, concerns about competitive harm to its business interests, and protecting the privacy of Registrant 3 outweigh the presumption of public access with respect to certain redacted portions of the Amended Complaint and the motion to dismiss exhibits (as well as references to these redacted portions in other filings).  (*See* EY US Br. at 1).  Having determined that each relevant filing is a judicial document and weighed the presumption of public access, the Court proceeds to consider the asserted bases for sealing in turn.

### 1. Attorney-Client Privilege

The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).  The purpose of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[C]ommunications between a corporation's employees and its inhouse counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the

14

predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, No. 20 Civ. 7472 (GHW), 2025 WL 1434375, at *4 (S.D.N.Y. May 17, 2025) (citation omitted).

It is well-established in the Second Circuit that "the public has a significant interest in preserving the confidentiality of attorney-client communications. Indeed, this is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records." *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 160 (S.D.N.Y. 2003) (citation omitted); *see also EEOC v. Kelley Drye  & Warren LLP*, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *4 (S.D.N.Y. Mar. 2, 2012) ("The preservation of attorney-client confidentiality is a well-recognized exception to the presumption of access.").  The Court thus determines whether the material referenced in the redacted portions of the Amended Complaint is protected by attorney-client privilege.[2]

### a.  EY Global's and EY US's Privilege Assertions

EY Global asserts attorney-client privilege over the redacted portions of ¶¶ 191, 201-203, 208, 211, 212, 214, 254-260, 262, and 318 of the Amended Complaint. (*See* EY Global Chart).[3]  EY US asserts attorney-client privilege, as well as attorney

---

[3] The EY Global Chart labels the relevant privilege asserted for each paragraph of the Amended Complaint and describes the contents in terms which suggest the applicability of the relevant privilege, but falls short of proffering arguments or relevant caselaw.

work product protection,[4] over redacted portions of ¶¶ 254, 257, 258, 262, certain bullet points in 318 and 340 of the Amended Complaint.  (*See* EY US Br. at 3-6).

EY Global asserts that the redacted portion of ¶ 191 describes "a request of and provision of legal advice by EY Global GCO [General Counsel Office]."  (EY Global Chart at 1).  The Court agrees that ¶ 191 reflects communications with EY Global Deputy General Counsel Steve Young.  The redacted portion of ¶ 191 is protected by attorney-client privilege.

EY Global asserts the same as to ¶ 201.  (EY Global Chart at 1).  The redacted portions of ¶ 201 describe an email sent by Howie to Global Deputy Assurance Leader David Kane regarding a presentation prepared by Howie and Howie's own thought process about whether to label the presentation privileged.  ¶ 202 provides more detailed descriptions of ongoing communications regarding the presentation and a general overview of the topics covered by the presentation.  ¶ 203 provides selected excerpts of the presentations Howie delivered.

"[T]he substance of the meeting may be privileged, but the fact of the meeting itself is not because it does not reveal any confidential communications."  *In re Application For Subpoena To Kroll*, 224 F.R.D. 326, 329 (E.D.N.Y. 2004); *see also Montauk U.S.A., LLC v. 148 S. Emerson Assocs., LLC*, No. 17 Civ. 4747 (SJF)

---

[4] EY US does not, however, develop its work product assertion or identify any litigation that was ongoing or reasonably anticipated at the time of the communications.  EY US seems to believe that the work product doctrine is coextensive with any expression of an attorney's "mental impressions, conclusions, opinions, or legal theories."  (EY US Br. at 5 (citation omitted)).  This, of course, is incorrect.  *U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 76 (S.D.N.Y. 2020) ("[F]or a document to be protected under the work-product doctrine, it must have been made in anticipation of litigation.").

(AKT), 2019 WL 254039, at *3 (E.D.N.Y. Jan. 17, 2019) ("Because the attorney-client privilege protects only the *substance* of communications made for the purpose of seeking legal advice, among other things, questions pertaining to the *existence* of such communications generally are not covered by the privilege.") (emphasis in original). As such, while ¶¶ 202 and 203 describe the content of communications for legal purposes and are protected by attorney-client privilege, ¶ 201 only describes the existence of such communications, and so it is not protected.

The first two sentences of ¶ 208 describe the fact that Howie made changes to his presentation, including in light of comments from EY Global in-house counsel Young, but they do not detail what changes were made. The last two sentences describe or imply the content of this presentation and thus changes suggested by counsel. The first two sentences are not protected by attorney-client privilege, while the last two are protected.

¶ 211 details specific examples of compliance concerns raised by Howie's presentations to EY leadership and Global GCO related to enabling GCO to protect the legal interests of EY Global. ¶ 211 is protected by attorney-client privilege.

¶ 212 describes Howie's preparation of his January 2022 presentation in light of discussions with and comments from EY leadership and Global GCO. It does not disclose any information about the content of the presentation or any feedback Howie received from Global GCO. ¶ 212 is not protected by attorney-client privilege.

The first sentence of the redacted portion of ¶ 214 details communications between the Global GCO and Howie, wherein the Global GCO issues directives to

17

Howie regarding his presentation.  While Howie alleges otherwise in this paragraph, the communications described suggest the provision of legal advice.  As such, attorney-client privilege applies to the first sentence.  However, the remainder of the redacted material in ¶ 214 does not describe privileged communications and is not protected.

The assertions at ¶¶ 254-260, ¶ 262 and various of the bullet points in ¶ 318 detail EY leadership and GCO's exchanges with Howie concerning the Global Watchlist Audit.  EY Global asserts privilege as to all of these paragraphs.  (EY Global Ltr. at 1; EY Global Chart).  EY US asserts privilege as to ¶¶ 254, 257, 258, 262, and 318.  (EY US Br. at 3-5).  They both argue that the redacted material reflects descriptions of legal advice and requests for legal advice from or to EY Global and EY US in-house attorneys.  (EY Global Ltr. at 1; EY US Br. at 3-5; *see also* Pater Decl. ¶ 16).  As with ¶ 214, Howie argues that these paragraphs merely describe EY leadership's reactions to materials distributed by Howie but not the provision of legal advice.  (Pl. Br. at 4-5).

The Court finds the privilege assertions to be well-founded.  This is true even to the extent some of the communications described are between Howie and other EY business personnel.  Attorney-client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."  *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).  "Privileged communications will not lose 'protection if an executive relays legal advice to another who shares responsibility

for the subject matter underlying the consultation.'" *In re Grand Jury Proc.*, No. 11 Misc. 189, 2001 WL 1167497, at \*27 (S.D.N.Y. Oct. 3, 2001) (citation omitted).  Each of ¶¶ 254-260, 262 and the relevant portion of ¶ 318 discloses communications reflecting advice given by or sought from EY US GCO and/or EY Global GCO regarding legal matters, and so the attorney-client privilege applies.

Moreover, the fact that employees from both EY Global and EY US are referenced in these communications does not undermine the privilege assertions. As EY Global and EY US both note, the two entities shared a common legal interest, which defeats any argument that confidentiality was waived by one entity sharing privileged communications with the other.  (EY US Br. at 5; EY Global Chart).  *See, e.g.*, *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) ("While the privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege."); *Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, No. 3:10cv401 (JBA), 2011 WL 677282, at \*2 (D. Conn. Jan. 24, 2011) (noting that common interest doctrine "has been used to extend the privilege to communications between a parent corporation and its attorneys which are also communicated to a subsidiary." (citation omitted)).

EY US independently asserts attorney-client and attorney work product privilege with respect to the redacted portion of ¶ 340, which concerns a conversation between Howie and EY US in December 2024.  (EY US Br. at 5-6).  The redacted portion only contains Howie's characterizations of EY's motivations

19

during the conversation, however, and not the content of the conversation. Therefore, it is not protected by either attorney-client privilege or the work product doctrine.

### b. Crime-Fraud Exception

Howie argues that, if and where attorney-client privilege does apply, the privilege is vitiated by the crime-fraud exception. (Pl. Br. at 6). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (cleaned up). "A party seeking to invoke the crime-fraud exception must demonstrate that there is probable cause (1) 'that the client communication or attorney work product in question was itself in furtherance of the crime or fraud' and (2) 'to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.'" *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127, 141-42 (2d Cir. 2025) (quoting *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (emphasis omitted)).

Although Howie has alleged EY GCO's indifference to EY clients' alleged connections to organized crime and other criminal activities, the allegations in the Amended Complaint are patently insufficient to satisfy the standard of probable cause to infer that EY's in-house attorneys acted in furtherance of a crime or fraud. Beyond the unsworn allegations in his pleading, Howie has made no evidentiary

showing whatsoever to substantiate his assertions.  As EY US rightly notes (EY US

Br. at 7), Howie's allegations are not enough to satisfy the probable cause standard.

*See, e.g.*, *Conopco, Inc. v. Wein*, No. 05 Civ. 09899 (RJH) (THK), 2007 WL 1859757,

at *8 (S.D.N.Y. June 28, 2007) (finding that "the allegations in the Complaint

cannot suffice to establish probable cause" because otherwise, a "party could use the

crime-fraud exception to wholly swallow the attorney-client privilege"); *Sony Elecs.,*

*Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 113 (D. Conn. 2002) ("Mere

allegations of a crime or fraud cannot defeat a claim of privilege[.]"); *Cohen v.*

*Unicomm, LLC*, No. 3:05 CV 1890 (JGM), 2008 WL 11480518, at *2 (D. Conn. Apr.

15, 2008) ("Plaintiff must offer some quantum of proof' of a crime or fraud, as this

exception to the attorney-client privilege is a limited one." (citation omitted)).

Accordingly, the crime-fraud exception does not warrant unsealing any of the

redacted material in the Amended Complaint.

### 2.  SOX Privilege

EY US asserts that the statutory privilege created by SOX relating to

communications with the PCAOB protects the material redacted in ¶¶ 263, 302 and

the final two bullet points of ¶ 318 of the Amended Complaint.  (EY US Br. at 7).

The statute provides:

> [A]ll documents and information prepared or received by or specifically for
> the Board [the PCAOB], and deliberations of the Board and its employees
> and agents, in connection with an inspection under section 7214 of this title
> or with an investigation under this section, shall be confidential and
> privileged as an evidentiary matter (and shall not be subject to civil discovery
> or other legal process) in any proceeding in any Federal or State court.

15 U.S.C. § 7215(b)(5)(A).

21

As EY US argues, the SOX privilege may apply to "the development of responses to Board inquiries" which are not ultimately communicated to the PCAOB. (EY US Br. at 7 (citing *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *4 (W.D. Mo. Oct. 10, 2012)). However, as the statute's text makes clear, privileged information must have been prepared "specifically" for the PCAOB in connection with an *actual* PCAOB inquiry (either "an inspection" or "an investigation"). The statute gives no indication that discussions regarding a *hypothetical* PCAOB inquiry, or regarding PCAOB inquiries in general, qualify for the privilege.

In any event, as Howie argues, ¶ 263 does not refer to any information prepared specifically for any PCAOB inquiry, hypothetical or otherwise; the redacted portion of ¶ 302 notes the relationship between EY's audit quality and PCOAB's failure rate, but again makes no reference to any PCAOB inquiry, actual or hypothetical; and the redacted bullets of ¶ 318 only refer to Taryn Vollmer's and Tricia Lavalle's respective roles with respect to PCAOB inquiries, and not the content of any communication prepared for a PCAOB inquiry. (Pl. Br. at 9).

In short, none of the relevant redactions are justified on the basis of the SOX statutory privilege.

### 3.  Confidential Business Information

Despite the presumption of public access to judicial documents, "courts may deny access to records that are sources of business information that might harm a litigant's competitive standing." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244

(S.D.N.Y. 2009) (citation omitted). "'[D]etailed financial information concerning a privately held business, not previously disclosed to the public, will in most cases warrant confidential treatment.'" *Forbes*, 2024 WL 1743109, at *9 (quoting *Closed Joint Stock Co. "CTC Network" v. Actava TV, Inc.*, No. 15 Civ. 8681 (GBD) (BCM), 2016 WL 1364942, at *4 (S.D.N.Y. Mar. 28, 2016)). "This is particularly true where revelation of 'specific business information and strategies . . . may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'" *Id.* (quoting *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 484, 511 (S.D.N.Y. 2015)).

The party opposing disclosure must make a particularized showing that disclosure would result in an injury sufficiently serious to warrant protection; "broad allegations of harm unsubstantiated by specific examples of articulated reasoning fail to satisfy the test." *Parmalat*, 258 F.R.D. at 244; *see also Kim v. BTG Pactual Asset Mgmt. US, LLC*, No. 22 Civ. 3547 (RA), 2022 WL 4115955, at *2 (S.D.N.Y. Sept. 9, 2022) (a "generalized concern of negative reaction" to disclosure of a party's business practices does not outweigh the presumption of access (citation omitted)).

### a. EY US Partnership Agreement

EY US moves to maintain under seal the Partnership Agreement submitted in support of their motion to dismiss (Dkt. No. 51 Ex. B), as well as ¶¶ 75-79, 81 and 325 of the Amended Complaint, which convey details of the Partnership Agreement, and related references to the Partnership Agreement in the parties' briefing. (EY

US Br. at 8-9).  The Partnership Agreement "governs the relationship between partners/principals and the firm, and sets forth the duties, obligations, and rights of partners/principals."  (Preston Decl. ¶ 4).  EY US argues that maintaining these redactions of the Amended Complaint and the Agreement under seal are necessary to protect its competitive business interests.  (EY US Br. at 8-9).  Howie responds that EY US has provided no substantive detail as to how any competitive harm would result from the unsealing of the Partnership Agreement.  (Pl. Br. at 10).

The Court begins by addressing the redacted paragraphs of the Amended Complaint that describe provisions of the Partnership Agreement.  These paragraphs describe, in general terms: Howie's rights (and lack thereof) as a partner under the Partnership Agreement with respect to firm governance; participation in substantive decisions; the structure, timing and form of his compensation; his ability to examine the firm's books and records; his ability to engage in outside activities; and provisions relating to early retirement.  EY US argues that unsealing this information "would cause EY US competitive harm" by "potentially facilitating poaching, among other harms."  (Dkt. No. 10 at 4; *see also* EY US Br. at 9; Preston Decl. ¶ 6).  These vague and conclusory assertions fall far short of meeting EY US's burden with respect to the contents of ¶¶ 75-79, 81 and 325.  EY US also argues that courts "routinely seal" confidential business information concerning "financial and business strategies."  (Dkt. No. 10 at 4).  But

24

the Court sees no information in the relevant paragraphs fitting that description, nor does EY US identify any specific information fitting that description.[5]

In short, EY US's broad and general allegations of harm fail to meet its burden of demonstrating sufficiently serious competitive harm justifying a sealing order. *See FIC v. Andersen*, No. 03 C 1174, 2007 WL 9747763, at *3 (N.D. Ill. Feb. 2, 2007) (finding that sealing of Arthur Andersen's partnership agreement not warranted where firm failed to explain "*how* or *why* disclosure would harm its . . . business or yield a competitive advantage to Andersen's competitors" (emphasis in original)); *see also United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) ("[C]onclusory statements that documents contain confidential business information are a far cry from the 'particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection' that is required to justify keeping the information under seal." (quoting *Lytle v. JPMorgan Chase,* 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011))).

Moreover, as is made clear by the parties' briefs on the motion to dismiss—as well as by the section heading in the Amended Complaint preceding ¶¶ 75-79 and 81, "Howie's Role as an Employee at the Firm" (*see* Am. Compl. at 22)—the redacted allegations are intended to bolster Howie's claim that he was only an "employee" of

---

[5] ¶ 325 also includes specific compensation amounts intended to support the (unredacted) allegation in the prior paragraph that EY "attempted to mislead Howie into accepting a reduced retirement settlement." (Am. Compl. ¶ 324). EY US does not explain how divulging Howie's compensation or retirement benefits would cause it competitive harm, or why the amounts in ¶¶ 324 and 325 should remain redacted.

EY and not a bona fide "partner."  That issue is front and center in EY US's motion

to dismiss and its lead argument for dismissal of Howie's retaliation claim under

SOX—the Amended Complaint's sole cause of action.  (*See* Dkt. No. 50 at 6-16; Dkt.

No. 56 at 7-11 (portion of EY Global's motion to dismiss also relying on this

argument); *see also* 18 U.S.C. § 1514A (prohibiting retaliation against an

"employee" due to employee's whistleblowing activities).  It thus appears that the

information related to the Partnership Agreement will play a "central role" in

determining the parties' rights on the motions to dismiss, *see Mirlis*, 952 F.3d at 60,

a circumstance where the presumption of access is "at its zenith."  *Lask v. Fallon*,

No. 24 Civ. 4751 (JMW), 2025 WL 1920366, at *5 (E.D.N.Y. July 11, 2025) ("[W]here

documents 'directly affect an adjudication,' or are used to determine the substantive

rights of the parties, the presumption of access is 'at its zenith' and can only be

overcome by extreme circumstances." (quoting *42West LLC v. Gould*, No. 21 Civ.

1581 (OTW), 2024 WL 4263235, at *2 (S.D.N.Y. Sept. 20, 2024)).[6]

EY US notes that Partnership Agreement imposes an obligation of

confidentiality upon Howie and that the Agreement "is itself marked confidential on

each page."  (EY US Br. at 8-9).  However, it is well settled that the parties' own

designation of a document as confidential is insufficient to overcome the

presumption of public access.  *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161,

168 (S.D.N.Y. 2018) ("[C]ourts in this District have long held that bargained-for

---

[6] For the avoidance of doubt, the Court has not formed, and does not express, any opinion as to the relative merits of the parties' competing arguments as to whether or not Howie qualifies as an "employee" under the SOX whistleblower provision.

confidentiality does not overcome the presumption of access to judicial documents.")

(collecting cases); *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 359

(S.D.N.Y. 2020) ("[T]he mere existence of a confidentiality agreement covering

judicial documents is insufficient to overcome the First Amendment presumption of

access." (cleaned up)).

Considering EY US's inadequate showing of competitive harm, together with

the importance of the information to the pending motions to dismiss, the Court

concludes that the information about the Partnership Agreement in the Amended

Complaint and the parties' briefs may not remain under seal.  The strong

presumption of public access to this information easily outweighs any slight interest

EY US may have in keeping it confidential.  "The details of the working relationship

and arrangement between the parties lie at the very heart of the litigation.  If the

public is to understand the nature of the dispute and the reasons for the court's

rulings, access to the judicial documents is essential." *Under Seal*, 273 F. Supp. 3d

at 472.

This finding does not necessarily resolve EY US's request to maintain sealing

of the Partnership Agreement itself.  In some cases courts have simply denied

outright requests for sealing of a partnership agreement.  *See, e.g.*, *Kelley Drye &

Warren*, 2012 WL 691545, at *2 (denying request for sealing of law firm partnership

agreement); *Andersen*, 2007 WL 9747763, at *2-3 (N.D. Ill. Feb. 2, 2007) (denying

request for sealing of Arthur Andersen's partnership agreement).  In other cases,

however, courts have allowed a partnership or employment agreement to be filed

27

under seal or in redacted form so long as the provisions of the agreement relevant to the particular motion could be publicly disclosed and discussed in the parties' briefs and the court's opinion. *See, e.g.*, *Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 372-73, 377 (S.D.N.Y. 2009) (granting unopposed motion to seal plaintiff's employment agreement while quoting and describing relevant provisions of the agreement in deciding motions for partial summary judgment and for a preliminary injunction); *B2B CFO Partners, LLC v. Kaufman*, No. CV 09-2158-PHX-JAT, 2011 WL 6297930, at *2 (D. Ariz. Dec. 16, 2011) (allowing filing of a redacted version of plaintiff's partnership agreement that leaves unredacted the "only portions of the Agreement that the parties claim are relevant here" as well as "any other provisions that . . .would not give a competitive edge to [plaintiff's] competitors").

Here, the EY US Partnership Agreement is some 52 pages long (including two appendices) and includes many provisions that the Court presumes have no bearing on the issues raised by the pending motions to dismiss. (*See* Dkt. No. 51 Ex. B). It may be that EY US can adequately demonstrate that some of these provisions contain confidential information which, if disclosed, would cause it competitive harm and that such harm would outweigh the presumption of public access given the immateriality of those provisions to the pending motions. The Court will allow EY US, if it wishes to do so, to make a renewed application for redaction (not wholesale sealing) of the Partnership Agreement on this basis. However, EY US may not seek to redact any of the provisions that are referred to in the Amended Complaint or the parties' briefs on the motions to dismiss. Judge

28

Abrams must remain free to quote or describe those provisions in her ruling.  EY US shall file any renewed motion by no later than April 9, 2026, after meeting and conferring with Plaintiff in accordance with Rule 5(A)(iii)(a) of Judge Abrams' Individual Rules and Practices in Civil Cases.

### b.  Rotational Agreements

While Howie filed the Rotational Agreements under seal on November 24, 2025 in compliance with EY's Global's request during the OSHA proceeding (Dkt. No. 66), EY Global's motion to seal filed on December 19, 2025 put forward no arguments for why the Rotational Agreements should be sealed.  Rather, EY Global's letter brief states only that EY Global seeks "limited redactions" in the Amended Complaint "to prevent disclosure of privileged communication that reflect . . . legal advice" requested of or provided by the EY GCO.  (EY Global Ltr. at 1). The letter refers to EY Global's chart detailing those privilege assertions.  (*Id.*). Neither the letter nor the chart mentions the Rotational Agreements.  (*See id.*; Dkt. No. 81; EY Global Chart).

As EY Global has met its burden of showing why the Rotational Agreements should remain under seal, the presumption of public access controls and requires that those documents be unsealed.

### c.  10-K of Registrant 3

Finally, EY US argues that the 10-K of Registrant 3 should be maintained under seal because disclosure would identify and thereby risk harming Registrant 3, a non-party who has lacks "any meaningful opportunity to challenge" Howie's

29

allegations. (EY US Br. at 10). EY US cites Howie's own anonymized reference to "Registrant 3" in the Amended Complaint. (*Id.* (citing Am. Compl. ¶¶ 7, 11, 105)). Howie does not specifically respond to this argument. (*See* Pl. Br.).

EY US's request for sealing of this document is unconventional. A Form 10-K is an annual report that publicly traded companies must file on the public record with the Securities and Exchange Commission. The 10-K of Registrant 3 is, therefore, already a public document. As a general rule, "it is improper to seal information that is already public." *N. Am. Soccer League LLC v. U.S. Soccer Fed., Inc.*, No. 17 Civ. 5495 (BMC), 2024 WL 2959967, at *30 (E.D.N.Y. June 12, 2024). This case, however, warrants an exception. Because EY US is submitting the 10-K to respond to the Amended Complaint's allegations concerning Registrant 3 (*see* Dkt. No. 50 at 21-27), if the 10-K were filed publicly in this case, it would reveal the identity of Registrant-3. That would be true even if the name of Registrant 3 were redacted, since the financial and other information in the 10-K would make it easy to identify the filer. And the identity of Registrant 3—as the entity that engaged in the wrongdoing alleged in the Amended Complaint—is not information that is already public.

"[P]rotecting the privacy interests of non-parties, including their business and financial records, represents a legitimate basis for sealing judicial documents." *Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19 Civ. 9439 (PKC), 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020). "'The privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation.'" *Amodeo II*, 71

30

F.3d at 1050-51 (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-80 (2d Cir. 1990)).  Given the privacy interests of Registrant 3 and the limited value of public access to this specific document, the 10-K of Registrant 3 shall be maintained under seal.  *See Desarrolladora*, 2024 WL 2049413, at *3 (redacting non-party name where the non-party "is not affiliated with any party, is not accused of any wrongdoing, and did not ask to be involved in this lawsuit").

## CONCLUSION

For the foregoing reasons, Defendants' motions to seal and Plaintiff's motions for unsealing are **GRANTED IN PART** and **DENIED IN PART**.  The parties are hereby ordered to refile the documents at Docket Nos. 6, 43, 49, 63, 72, 79, 80, and 84, with redactions limited to those permitted by this Opinion & Order.

The Clerk of Court is respectfully directed to unseal: (1) Docket No. 82, by no sooner than March 31, 2026: and (2) Docket No. 51-1 (Exhibit B to the Declaration of David A. Gordon), by no sooner than April 10, 2026.  Those Docket Entries shall, however, remain under seal if a request for continued sealing is made before the relevant unsealing date.

The Clerk of Court is further respectfully directed to close the motions pending at Docket Nos. 5, 42, 47, 62, 66, 69, 75, 81, and 83.

**SO ORDERED.**

New York, New York
March 26, 2026

_____
GARY STEIN
United States Magistrate Judge

31