UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOE HOWIE,

                                  Plaintiff,

                 -against-

ERNST & YOUNG LLP, ERNST &
YOUNG US LLP, AND ERNST &
YOUNG GLOBAL LIMITED,

                              Defendants.
------------------------------------------------------------------------X

**25 Civ. 5973 (RA) (GS)**

**ORDER**

**GARY STEIN, United States Magistrate Judge:**

Defendants Ernst & Young LLP and Ernst & Young U.S. LLP (together, "EY US") have moved to seal portions of the EY US Partnership Agreement, submitted in connection with EY US's motion to dismiss the Amended Complaint in this action. (Dkt. No. 94). Plaintiff Joe Howie ("Howie") opposes the motion. For the reasons set forth below, EY US's motion is **GRANTED**.

BACKGROUND

On March 26, 2026, this Court issued an Opinion and Order addressing, *inter alia*, a prior motion by EY US to seal the entirety of the Partnership Agreement. (Dkt. No. 86 (the "March 2026 Order") at 23–29). The Court denied that request, finding that the presumption of public access to those portions of the Partnership Agreement referenced in the Amended Complaint and the parties' briefing on the motions to dismiss filed by EY US and Ernst & Young Global Ltd. outweighed EY US's interest in maintaining the confidentiality of this information. (*Id.* at 27).

However, the Court also recognized that the Partnership Agreement may include provisions that (1) "have no bearing on the issues raised by the pending motions to dismiss" and (2) "contain confidential information which, if disclosed, would cause [EY US] competitive harm" outweighing the presumption of access. (*Id.* at 28).  The Court therefore allowed EY US to file a renewed application seeking to redact portions of the Partnership Agreement.  (*Id.* at 29).

On April 9, 2026, EY US filed such a renewed application (Dkt. No. 94), along with a supporting memorandum of law (Dkt. No. 95 ("EY US Br.")); a declaration from James Preston, U.S. Partnership Operations Leader for EY US (Dkt. No. 96-1 ("Preston Decl.")); and a proposed redacted version of the Partnership Agreement (Dkt. No. 96-2).  EY US's renewed motion seeks redactions as to five of the 22 sections in the Partnership Agreement: Sections 7(b) and (e), Section 12, Sections 10(a)–(c), Section 11(e), and Section 14.  (EY US Br. at 4–9).  EY US generally contends that these sections are not referenced in the Amended Complaint or motions to dismiss and contain confidential and competitively sensitive information that could harm EY US's competitive standing if publicly released.  (*See id.*).

Howie filed his brief in opposition to EY US's motion on April 23, 2026, disputing EY US's contentions and arguing that no redactions are warranted.  (Dkt. No. 109 ("Pl. Br.")); *see* Dkt. No. 108 (unredacted version)).  EY US filed a reply brief

2

on April 30, 2026 (Dkt. No. 112 ("Reply")), along with a declaration from its counsel, David A. Gordon (Dkt. No. 113 ("Gordon Decl.")).[1]

## DISCUSSION

There is a long-established "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citation omitted). As a result, motions to seal must be "carefully and skeptically review[ed]" in order to "insure that there really is an extraordinary circumstance or compelling need" to seal the document from public inspection. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

"The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches." *Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23 Civ. 11168 (JGLC), 2024 WL 1743109, at *8 (S.D.N.Y. Apr. 23, 2024). First, the court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Lugosch*, 435 F.3d at 119. Second, if the documents are judicial documents, the

---

[1] As a procedural matter, Howie contends that EY US did not sufficiently meet and confer with him prior to filing its motion to redact portions of the Partnership Agreement. (Pl. Br. at 2 n.2). But in the morning of the day before EY US filed its motion, EY US's counsel sent Howie's counsel a draft of its anticipated motion and asked for Howie's position. (Gordon Decl. Ex. A). Howie's counsel responded the next day in an email that, while reserving Howie's rights, stated that counsel did not think "there are issues based upon my review and our discussions and I do not anticipate that we will oppose." (*Id.*). Thus, Howie's contention is rejected.

court must determine the weight of the presumption of access.  *Id.*  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).  Third, the court must balance "competing considerations" against the weight of the presumption of access.  *Lugosch*, 435 F.3d at 120.  In conducting this balancing analysis, "courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'"  *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

As the Court has already found, the Partnership Agreement is a judicial document.  (March 2026 Order at 11).  The parties do not dispute this.  Rather, they disagree over the weight of the presumption of access to be applied to the information in the Partnership Agreement that EY US seeks to redact, and over whether EY US has adequately shown that disclosure of the information could cause it competitive harm.

EY US claims that the presumption of access to the information in question is "non-existent."  (EY US Br. at 4, 7, 8).  While the Court disagrees with that sweeping claim, it does find that the presumption of access is relatively weak.  None of the particular sections or sub-sections containing the redacted information are explicitly referenced in the Amended Complaint or the parties' briefing on the motions to dismiss.  Consequently, any relevance that these provisions would have

on the key issue raised by the motions to dismiss—whether Howie qualifies as an "employee" of EY US for purposes of the Sarbanes-Oxley Act's whistleblower provision—is presumably slight, at least according to the parties.  That makes it unlikely that these provisions will play a significant role in the ruling on the motions to dismiss.  *See Bernstein v. Bernstein, Litowitz Berger & Grossman LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("Where a document's 'role in the performance of Article III duties' is 'negligible . . ., the weight of the presumption is low.'" (quoting *Amodeo*, 71 F.3d at 1050)); *TufAmerica, Inc. v. Songs of Universal*, No. 24 Civ. 2585 (DEH), 2025 WL 1225210, at \*2 (S.D.N.Y. Apr. 24, 2025) (allowing partial sealing of agreement where, although "Defendant seeks to use the document as a whole to support its motion to dismiss," the "specific information to be redacted . . . has no bearing on the merits of Defendant's motion").

Howie's arguments to the contrary are unpersuasive.  Howie does not dispute that the specific provisions of the Partnership Agreement that EY US seeks to redact are not referenced in the Amended Complaint or the briefing on the motions to dismiss.[2]  He now puts forth arguments as to why certain of those provisions may be relevant (*see* Pl. Br. at 5, 6, 7), but, as EY US notes in its Reply, those arguments

---

[2] Howie does argue that Sections 10(a)–(c) are "clearly" and "directly referenced" in the Amended Complaint because they relate to EY US's retirement plans and benefits and the Amended Complaint alleges that Defendants tried to "mislead Howie into accepting a reduced retirement settlement." (Pl. Br. at 7).  But Howie does not point to any specific provision in Sections 10(a)–(c), which spans more than two pages of text, that is explicitly referenced in the Amended Complaint, nor does he explain how any such provision is relevant to the arguments on the motions to dismiss. Moreover, following the Court's March 2026 Order, the relevant paragraphs in the Amended Complaint pertaining to Howie's allegations concerning retirement benefits have now been fully unredacted and are thus available for public inspection.  (*See* Dkt. No. 103-1 ¶¶ 324–27).

were not made in Howie's opposition briefs on the motions to dismiss themselves (*see* Reply 3–4, 5, 6).  The Court finds those opposition briefs to be a more reliable guide in assessing the likely relevance of the Partnership Agreement provisions in question to the issues concerning Howie's employment status presented on the motions to dismiss, than Howie's arguments crafted with an eye towards denying EY US's motion for partial sealing.

Howie also predicts that certain of the provisions that EY US seeks to redact "will be the subject of deposition questions and other discovery, and undoubtedly also will be addressed in summary judgment briefing." (Pl. Br. at 6; *see also id.* at 8 (contending that other provisions relate to issues that "will be the subject of discovery and future briefing")).  But it is illogical and incorrect to assess the weight of the presumption of access based on hypotheticals about how information might become relevant at a *future* stage in the proceedings.  The assessment must be based on the information's relevance to the *current* motions and pleadings.  There will be time enough to conduct an analysis of whether provisions of the Partnership Agreement should be sealed for purposes of discovery or summary judgment motion practice if and when the issue arises and based on the pertinent circumstances at that time.  *See Conservation Law Found. v. Shell Oil Co.*, No. 3:21-cv-933 (JAM), 2023 WL 5567614, at *8 (D. Conn. May 16, 2023) (granting sealing as to documents that enjoyed relatively low presumption of access while "express[ing] no view as to whether they would merit sealing if submitted at a later phase of the case").

Turning to the third prong of the test, the Court finds that EY US has sufficiently demonstrated that it treats the information in the Partnership Agreement as confidential and takes adequate steps to maintain the confidentiality of the information.  The Partnership Agreement bears a "Confidential" legend on each page (*see* Dkt. No. 51-1), and EY US's Preston previously affirmed in this action that the Agreement is treated as "a confidential, highly sensitive internal governance document" with access to it restricted within the firm.  (Dkt. No. 78-2, Declaration of James Preston, Dec. 19, 2025, ¶¶ 4–5).

Of course, as the Court's March 2026 Order noted, a party's "own designation of a document as confidential is insufficient to overcome the presumption of public access." (March 26 Order at 26).  The Court previously found that EY US had failed to make a sufficiently specific showing that disclosure of the portions of the Partnership Agreement referenced in the Amended Complaint and the parties' briefs would threaten to cause EY US competitive harm justifying the continued redaction of that material.  (*See id.* at 25).  Based on the statements in the additional Preston Declaration accompanying EY US's renewed application, the Court finds that EY US has sufficiently established potential competitive harm to warrant the far more limited redactions it now proposes.

The Preston Declaration submitted on this motion goes through each of the sections of the Partnership Agreement that EY US seeks to redact, describes what information in those sections is competitively sensitive, and explains why disclosure of that information could cause EY US competitive harm.  (*See* Preston Decl.  ¶¶ 5–

8 (concerning Sections 7(b) and (e)); ¶¶ 9–11 (concerning Section 12); ¶¶ 12–15 (concerning Sections 10(a)–(c), 11(e), and 14)).  For example, Preston asserts that knowledge of EY US's internal accounting and financial management practices, as described in Sections 7(b) and (e), would provide competitors with "insight into the firm's capital and financing strategy," risking competitive harm by allowing competitors to attempt to replicate or exploit EY US's practices.  (*Id.* ¶¶ 7– 8).  Preston also explains that disclosure of the specifics of EY US's non-compete and non-solicitation provisions (set forth in Section 12), the retirement and death benefits available to partners (Sections 10(a)–(c)), the firm's obligations to partners who withdraw (Section 11), and EY US's promises to indemnify partners and former partners (Section 14) could cause EY US competitive harm by making it easier for competitors to target efforts to recruit EY US partners.  (*Id.* ¶¶ 11, 14).

To be sure, none of these provisions contains the kind of detailed financial data, pricing or marketing strategies, or trade secrets that are more typically (and easily) viewed as competitively sensitive information.  (*See* Pl. Br. at 9).  But competitively sensitive confidential business information is not limited to these categories.  Courts have also permitted sealing or redaction of confidential information concerning a firm's internal structure, operations, and governance.  *See, e.g.*, *Plain Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193 (PGG) (SLC), 2025 WL 1305150, at *5 (S.D.N.Y. May 6, 2025) (permitting filing of sealed and redacted LLP agreements and LLC operating agreements because operating structure outlined by the agreements was based on companies'

8

"judgment and experience in the industry[,]" and revealing such information would enable competitors to "capitalize on their own strengths and exploit the [companies'] weaknesses in bidding for future private and public projects"); *J.M. Woodworth Risk Retention Grp., Inc. v. Uni-Ter Underwriting Mgmt. Corp.*, No. 2:13-cv-911-JAD-PAL, 2014 WL 12769806, at *1–2 (D. Nev. May 20, 2014) (permitting filing under seal of party's corporate bylaws because "they contain proprietary and confidential information about the corporate structure and internal governance of Plaintiff's business" that, if disclosed, "would place Plaintiff in a position of strategic disadvantage") (cleaned up); *B2BCFO Partners, LLC v. Kaufman*, No. CV 09-2158-PHX-JAT, 2011 WL 6297930, at *2 (D. Ariz. Dec. 16, 2022) (permitting filing of redacted partnership agreement that set forth "information about [B2B's] internal structure and operations" that the business claimed "would be of great economic value to B2B's competitors").

In sum, EY US's showing of potential competitive harm, while not overwhelming, is adequate to warrant redaction of the requested portions of the Partnership Agreement when considered in conjunction with the low presumption of access that attaches to the material at this early stage of the litigation.

## CONCLUSION

Accordingly, EY US's motion to seal portions of the Partnership Agreement is

**GRANTED**.  The Clerk of Court is respectfully requested to close the motion

pending at Docket Number 94.

**SO ORDERED.**

DATED:    New York, New York
          May 20, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge